SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 26 2010
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | No. 3-10CR 138-K |
| v. § | |
| § | |
| BLAKE WILLIAMS and § | |
| DEREK LOPEZ, § | |
|   a/k/a "Da Big Kahuna", § | **PLEASE FILE UNDER SEAL** |
| § | |
|     Defendants. § | |

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times material to this Indictment:

1. **Blake Williams ("Williams")** was a securities broker-dealer and employee of TBeck Capital, Inc. ("TBeck Capital"), a purported investment banking and securities trading firm located in Grapevine, Texas. **Williams** resided in Dallas, Texas.

2. **Derek Lopez ("Lopez")** was a securities broker-dealer who provided broker-dealer services to TBeck Capital. **Lopez** resided in Torrance, California. "Da Big Kahuna" was a name in which **Lopez** traded stock.

3. Co-conspirator 1 ("CC-1") was the President and owner of TBeck Capital and claimed to be an investment banker. CC-1 was also the father of **Williams**. CC-1 enlisted broker-dealers, investment research consultants, and other investment consultants to assist him in a scheme to manipulate the stock prices and volume of publicly-traded companies. CC-1 died in December 2008.

4. Paul M. Gozzo ("Gozzo") was a securities broker-dealer and purported independent investment consultant hired by CC-1 to assist **Williams, Lopez**, CC-1 and others in manipulating the stock prices of the publicly-traded companies in which CC-1 owned large positions of free-trading stock.

5. TBeck Capital was a corporation registered in the state of Florida with a principal business address in Grapevine, Texas, in the Northern District of Texas.

6. Brokerage Firm 1 was a securities brokerage firm located in Arlington, Texas, in the Northern District of Texas, that provided brokerage services to **Williams** and TBeck Capital. **Williams** and TBeck Capital maintained accounts at Brokerage Firm 1 in which they had trading authority.

7. Investment Firm 1 was an investment banking and securities corporation registered in the state of Texas, with an office in Dallas, Texas, in the Northern District of Texas, that provided securities trade clearing services for Brokerage Firm 1.

8. Brokerage Firm 2 was a securities brokerage firm located in Boca Raton, Florida, that provided brokerage services to **Williams**, TBeck Capital, and CC-1.

9. Investment Firm 2 was a corporation registered in the state of North Carolina, with its principal place of business in Dallas, Texas, in the Northern District of Texas, that provided securities trade clearing services for Brokerage Firm 2.

10. Valek Investments, Inc. ("Valek Investments") was a company registered in the state of Texas, with its principal place of business located in Dallas, Texas, in the Northern District of Texas. **Williams** was a director of Valek Investments.

## COUNT 1
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 371)

11.     Paragraphs 1 through 10 are realleged and incorporated by reference as though fully set forth herein.

12.     From in or about August 2006 through in or about December 2008, in the Dallas Division, in the Northern District of Texas, and elsewhere, the defendants, **Blake Williams** and **Derek Lopez a/k/a "Da Big Kahuna,"** did knowingly and intentionally conspire, combine, confederate and agree with CC-1, Gozzo, and others known and unknown to the Grand Jury, directly and indirectly, by use of the instrumentalities of communication in interstate commerce and the mails, to willfully use and employ manipulative and deceptive devices and contrivances to (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business that operated and would operate as a fraud and deceit on members of the investing public in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Purpose of the Conspiracy

13.     It was the purpose and object of the conspiracy for **Williams, Lopez**, CC-1, Gozzo and others to unlawfully enrich themselves by, among other things, illicitly

profiting from the manipulation of the stock prices and trading volume of publicly-traded companies they administered through the control of large positions of free-trading stock.

## Manner and Means

The manner and means by which **Williams**, **Lopez**, CC-1, Gozzo, and others known and unknown to the Grand Jury sought to accomplish the purpose of the conspiracy included, among other things:

14. Companies owned and controlled by CC-1, including TBeck Capital, would obtain control of large positions of free-trading stock in various publicly-trading companies.

15. CC-1 would hire and cause the hiring of **Williams**, **Lopez**, Gozzo, and others, to assist him in manipulating the stock prices and trading volume of the publicly-traded companies in which companies owned by CC-1, including TBeck Capital, owned and controlled large positions of free-trading stock and in which he was involved in company administration.

16. **Williams**, **Lopez**, CC-1, Gozzo, and others would create the false appearance that there was a greater investor interest in the stock they were manipulating by, among other things, providing "support bids" for shares of those companies.

17. **Williams** and **Lopez** would engage in coordinated trades of stock with each other, CC-1, Gozzo, and others, for the purpose of keeping the stock price artificially inflated and further inflating the stock price and to create the impression that there was greater investor interest in the stock than truly existed, thus permitting **Williams**, **Lopez**, CC-1, Gozzo, and others to sell that stock at an artificially high price.

18. **Williams** would trade in his own name, and in the name of several companies – including TBeck Capital; Warren Street Investments, Inc. ("Warren Street"); BGW (Blake G. Williams) Enterprises, Inc. ("BGW Enterprises"); Victoria Financial Consultants, LLC ("Victoria Financial"); Valek Investments; and Emerging Resources, Inc. – for the purpose of making it appear that there were multiple unrelated entities buying and selling the stock.

19. **Lopez** would trade in his own name, and in the name "Da Big Kahuna," for the purpose of disguising the fact that he controlled the trades.

20. **Lopez** would represent to others, including his employer, that "Da Big Kahuna" was a company owned and operated by his father, for the purpose of disguising the fact that **Lopez** was trading in stock.

21. **Williams** and **Lopez** would trade through accounts maintained at Brokerage Firm 1 and Brokerage Firm 2, which cleared through Investment Firm 1 and Investment Firm 2, respectively, and at other investment banking and securities firms.

22. In return for **Williams'** assistance in manipulating the stock prices of companies in which TBeck Capital owned and controlled large positions of free-trading stock, CC-1 would compensate and cause the compensation of **Williams** in the form of cash payments.

23. In return for **Lopez's** assistance in manipulating the stock prices of companies in which TBeck Capital owned and controlled large positions of free-trading stock, CC-1 would compensate and cause the compensation of **Lopez** in the form of free-trading stock and cash payments.

## Overt Acts

In furtherance of the conspiracy and to accomplish its purpose and object, at least one of the conspirators committed or caused to be committed in the Dallas Division, in the Northern District of Texas, and elsewhere, at least one of the following overt acts, among others:

24.   On or about October 2, 2006, **Williams**, CC-1, Gozzo and others agreed to increase the stock price at a rate of 5-10% per day of a company in which TBeck Capital owned and controlled a majority of the free-trading stock (hereinafter "Company A").

25.   On or about October 4, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 5,000 shares of Company A at the price of $0.56 per share.

26.   On or about October 5, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 2,500 shares of Company A at the price of $0.67 per share.

27.   On or about October 6, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 1,000 shares of Company A at the price of $0.73 per share.

28.   On or about October 7, 2006, CC-1, in exchange for stock and cash fees, asked **Lopez** to assist in creating more volume in the stock of a company in which TBeck Capital owned and controlled a majority of the free-trading stock (hereinafter "Company B").

29. On or about October 9, 2006, **Lopez** purchased 500 shares of Company B at the price of $2.25 per share.

30. On or about October 10, 2006, **Lopez** purchased 250 shares of Company B at the price of $2.35 per share.

31. On or about October 10, 2006, **Lopez** purchased 550 shares of Company B at the price of $2.45 per share.

32. On or about October 13, 2006, CC-1 sent an email to **Williams**, informing him that for that day, the target price for Company A was $0.98 and for Company B was $2.70.

33. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 6,500 shares of Company A at the price of $0.90 per share.

34. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 1,000 shares of Company A at the price of $0.92 per share.

35. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 2,500 shares of Company A at the price of $0.91 per share.

36. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 2,500 shares of Company A at the price of $0.95 per share.

37. On or about October 13, 2006, **Williams** caused a Warren Street trading account maintained at Brokerage Firm 2 to sell 5,000 shares of Company A at the price of $0.90 per share.

38. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 1,000 shares of Company B at the price of $2.68 per share.

39. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 1,000 shares of Company B at the price of $2.70 per share.

40. On or about October 13, 2006, **Williams** caused a TBeck Capital trading account to sell 500 shares of Company B at the price of $2.70 per share, in a trade that was cleared through Investment Firm 2.

41. On or about October 26, 2006, **Williams** incorporated Valek Investments.

42. On or about November 16, 2006, CC-1 asked **Lopez** to make "support bids" in the stock of Company B.

43. On or about November 16, 2006, **Lopez** purchased 1,000 shares of Company B at the price of $1.55 per share.

44. On or about December 14, 2006, **Williams** and Gozzo agreed to increase the trading volume of the stock of a company in which CC-1 owned and controlled a majority of the free-trading stock (hereinafter "Company C").

45. On or about December 15, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to sell 5,000 shares of Company C at the price of $0.30 per share.

46. On or about December 15, 2006, **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 2 to sell 5,000 shares of Company C at the price of $0.305 per share.

47. On or about December 15, 2006, Gozzo purchased 4,000 shares of Company C at the price of $0.34 per share, through a trading account in the name of P&G Capital, Inc.

48. On or about January 24, 2007, CC-1 sent an email to **Williams, Lopez**, and others asking them to cease all trading in the stock of a company in which TBeck Capital owned and controlled a majority of the free-trading stock (hereinafter "Company D") for the first two hours to see where the trading would go.

49. On or about January 24, 2007, **Lopez**, through a "Da Big Kahuna" trading account, having earlier that day placed several buy orders for a total of 33,950 shares of Company D at the price of $0.20 per share, cancelled all of the buy orders.

50. On or about January 26, 2007, CC-1 sent an email to **Williams**, stating that he was at $0.30 per share of Company A and instructing **Williams** to move his position up to $0.29 per share of Company A.

51. On or about January 26, 2007, **Williams** caused a BGW Enterprises trading account to purchase 11,950 shares of Company A at the price of $0.2855 per share.

52. On or about April 27, 2007, **Williams** opened an account in the name of Valek Investments, with **Williams** having signatory and trading authority on the account, at Brokerage Firm 1.

53. On or about April 27, 2007, **Williams** opened an account in the name of Blake Williams, with **Williams** having signatory and trading authority on the account, at Brokerage Firm 1.

54. On or about June 2, 2007, **Williams** agreed with CC-1 and others to move the stock price of Company B so that it would be $0.09 per share by the close of trading on June 4, 2007.

55. On or about June 2, 2007, **Williams** agreed with CC-1 and others to move the stock price of Company B so that it would be $0.12 per share by the close of trading on June 5, 2007.

56. On or about June 4, 2007, **WILLIAMS** purchased 20,500 shares of Company B at the price of $0.095 per share.

57. On or about June 5, 2007, **Williams** purchased 30,000 shares of Company B at the price of $0.11 per share.

58. On or about September 25, 2007, **Williams** opened an account in the name of BGW Enterprises, with **Williams** having signatory and trading authority on the account, at Brokerage Firm 1.

All in violation of 18 U.S.C. § 371.

## COUNTS 2-8
Securities Fraud
(15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2)

59. Paragraphs 1 through 10 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

60. On or about the dates set forth below, in the Dallas Division, in the Northern District of Texas, and elsewhere, the defendants, **Blake Williams** and **Derek Lopez a/k/a "Da Big Kahuna,"** as well as others known and unknown to the Grand Jury, directly and indirectly, by use of the means and instrumentality of interstate commerce and of the mails, did willfully use and employ manipulative and deceptive devices and contrivances to (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business that operated and would operate as a fraud and deceit on members of the investing public in connection with the purchase and sale of securities, as described below:

| Count | On or About Date | Description |
|---|---|---|
| 2 | October 4, 2006 | **Williams** caused a TBeck Capital trading account maintained at Brokerage Firm 1 to purchase 5,000 shares of Company A at the price of $0.56 per share |
| 3 | October 10, 2006 | **Lopez** purchased 550 shares of Company B at the price of $2.45 per share |
| 4 | October 13, 2006 | **Williams** caused a TBeck Capital trading account to sell 500 shares of Company B at the price of $2.70 per share |

| 5 | November 16, 2006 | **Lopez** purchased 1,000 shares of Company B at the price of $1.55 per share |
| 6 | December 15, 2006 | **Williams** caused a TBeck Capital account maintained at Brokerage Firm 1 to sell 5,000 shares of Company C at the price of $0.30 per share |
| 7 | January 24, 2007 | **Lopez**, through a "Da Big Kahuna" trading account, placed a buy order for 16,975 shares of Company D at the price of $0.20 per share |
| 8 | January 26, 2007 | **Williams** caused a BGW Enterprises trading account to purchase 11,950 shares of Company A at the price of $0.2855 per share |

Each in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.

## FORFEITURE NOTICE
(18 U.S.C. §§ 981, 982; 28 U.S.C. § 2461)

61. The allegations contained in Counts 1, 4 and 6 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

62. As a result of the conspiracy and securities fraud offenses alleged in Counts 1, 4 and 6 of this Indictment, the defendants, **Blake Williams** and **Derek Lopez a/k/a "Da Big Kahuna,"** shall, upon conviction of each such offense forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to the alleged conspiracy and securities fraud offenses, wherever located, and in whatever name held, including but not limited to a money judgment in an amount to be determined at trial, which represents the gross proceeds of the fraud.

63. If the property described above as being subject to forfeiture, as a result of any act of omission of **Williams** or **Lopez**,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461, and pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendants **Blake Williams** and **Derek Lopez a/k/a "Da Big Kahuna"** up to the value of the above forfeitable property.

A TRUE BILL

_____
FOREPERSON

DENIS J. McINERNEY
Chief, Fraud Section
Criminal Division
United States Department of Justice

_/s/ Hank Bond Walther_
HANK BOND WALTHER
Acting Deputy Chief
NICOLE H. SPRINZEN
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20530
(202) 307-2538
Hank.Walther@usdoj.gov
Nicole.Sprinzen@usdoj.gov

SEALED



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

BLAKE WILLIAMS (1)
DEREK LOPEZ
aka "Da Big Kahuna"

3-10CR 138-K

### SEALED INDICTMENT

18 U.S.C. § 371 Conspiracy to Commit Securities Fraud

15 U.S.C. §§ 78j(b), 78ff, 17 CFR § 240.10b-5, 18 U.S.C. § 2
Securities Fraud

18 U.S.C. §§ 981, 982; 28 U.S.C. § 2461
Forfeiture Notice

8 Counts

A true bill rendered

_____
DALLAS                    FOREPERSON

Filed in open court this 26th day of May 2010.

_____
                                   Clerk

**PLEASE ISSUE ARREST WARRANTS for Blake Williams and Derek Lopez aka "Da Big Kahuna"**

_Jorge A. Solis_
_____
UNITED STATES DISTRICT/~~MAGISTRATE JUDGE~~
NO CRIMINAL CASE PENDING

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

**Related Case Information**

Superseding Indictment: ☐ Yes ☒ No    New Defendant: ☒ Yes ☐ No

Pending CR Case in NDTX: ☐ Yes ☒ No   If Yes, number: _____

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number: _____

1. **Defendant Information**

   Juvenile: ☐ Yes ☒ No

   If Yes, Matter to be sealed:
   ☒ Yes ☐ No

   Defendant Name _____ Blake Williams _____

   Alias Name _____

   Address _____ 5665 Arapaho Road, Apartment 1632, Dallas, TX _____

   County in which offense was committed: _____ Dallas _____

2. **U.S. Attorney Information**

   Nicole H. Sprizen, Trial Attorney               Bar # DC #468568
   Fraud Section, Criminal Division, US Dept of Justice

   **RECEIVED MAY 26 2010 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS**

3. **Interpreter**

   ☐ Yes ☒ No    If Yes, list language and/or dialect: _____

4. **Location Status - PLEASE ISSUE ARREST WARRANT**

   ☐ Already in Federal Custody as of
   ☐ Already in State Custody
   ☐ On Pretrial Release

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant: 8    ☐ Petty  ☐ Misdemeanor  ☒ Felony

   | Citation | Description of Offense Charged | Count(s) |
   |---|---|---|
   | 18 U.S.C. § 371 | Conspiracy to Commit Securities Fraud | 1 |
   | 15 U.S.C. §§ 78j(b), 78ff, 17 CFR § 240.10b-5, 18 U.S.C. § 2 | Securities Fraud | 2-8 |
   | 18 U.S.C. §§ 981, 982; 28 U.S.C. § 2461 | Forfeiture Notice | |

   Date 5/25/10         Signature of AUSA: _____

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

SEALED

**Related Case Information**

Superseding Indictment: ☐ Yes ☒ No    New Defendant: ☒ Yes ☐ No

Pending CR Case in NDTX: ☐ Yes ☒ No    If Yes, number: _____

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number: _____

1. **Defendant Information**

   Juvenile: ☐ Yes ☒ No

   If Yes, Matter to be sealed:

   ☒ Yes ☐ No

   Defendant Name _____Derek Lopez_____

   Alias Name _____Da Big Kahuna_____

   Address _____5220 Vanderhill Rd., Torrance CA 90505_____

   County in which offense was committed: _____Dallas_____

2. **U.S. Attorney Information**

   Nicole H. Sprizen, Trial Attorney                 Bar # DC #468568
   Fraud Section, Criminal Division, US Dept of Justice

3. **Interpreter**

   ☐ Yes ☒ No    If Yes, list language and/or dialect: _____

   RECEIVED MAY 26 2010 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

4. **Location Status - PLEASE ISSUE ARREST WARRANT**

   ☐ Already in Federal Custody as of
   ☐ Already in State Custody
   ☐ On Pretrial Release

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant: 8    ☐ Petty  ☐ Misdemeanor  ☒ Felony

   | Citation | Description of Offense Charged | Count(s) |
   |---|---|---|
   | 18 U.S.C. § 371 | Conspiracy to Commit Securities Fraud | 1 |
   | 15 U.S.C. §§ 78j(b), 78ff, 17 CFR § 240.10b-5, 18 U.S.C. § 2 | Securities Fraud | 2-8 |
   | 18 U.S.C. §§ 981, 982; 28 U.S.C. § 2461 | Forfeiture Notice | |

   Date __5/25/10__                Signature of AUSA: _____